```
          IN THE UNITED STATES DISTRICT COURT
               NORTHERN DISTRICT OF TEXAS
                   FORT WORTH DIVISION

JAMES CONSTRUCTION GROUP,       §
                                §
          Plaintiff,            §
                                §
VS.                             §   NO. 4:05-CV-345-A
                                §
DALLAS/FORT WORTH INTERNATIONAL §
AIRPORT BOARD, ET AL.,          §
                                §
          Defendants.           §
```

## MEMORANDUM OPINION
## and
## ORDER

On September 28, 2006, plaintiff, James Construction Group f/k/a Angelo Iafrate Construction, LLC, ("James Construction"), moved for partial summary judgment on the counterclaim asserted by defendant and counter-plaintiff, Dallas/Fort Worth International Airport Board ("DFW"). Having considered the motion, the response, the reply, the summary-judgment evidence, the applicable legal authorities, and the joint pretrial order submitted by the parties on October 20, 2006, the court concludes that the motion should be denied.

I.

Case Overview

This is a breach-of-contract case. In September 2000, DFW contracted with James Construction to construct an approximately 2,000-foot extension of Runway 18L, a holding apron, and connecting taxiways (hereinafter, "the Contract"). In return, DFW was to pay James Construction $32,687,636.25.[1]  When DFW

---

[1] This sum was later adjusted downward by agreement to $32,052,760.40.

refused to give final acceptance of the work and retained $650,800 from payment, James Construction filed this suit. In response, DFW counterclaimed for approximately $3,668,021.20 in damages, complaining about James Construction's allegedly shoddy installation of a spiral ribbed metal pipe ("the SRMP") and certain manholes, as well as damage to a water main during the installation of the SRMP.[2]

II.

Grounds for Summary Judgment

James Construction seeks summary judgment on DFW's counterclaim regarding the installation of the SRMP, generally claiming that, as a matter of law, DFW cannot prove the elements of breach of contract with respect to this claim. More specifically, it alleges that: (A) the deflection criteria allegedly relied upon by DFW in asserting faulty installation of the SRMP is not part of the contract; (B) any breach of contract respecting the SRMP was not material; (C) DFW has not suffered any damage; and, alternatively, (D) DFW cannot recover damages for the cost of replacing the SRMP but is instead limited to the cost of repairing it. See Pl.'s Br. in Supp. of Mot. for Partial Summ. J. ("Pl.'s Br.") at 1-2. James Construction also argues that DFW may not recover attorney's fees, because DFW failed to present its counterclaim in accordance with Section 38.002 of the Texas Civil Practice and Remedies Code. Id.

---

[2]DFW has also sued National Fire Insurance Company ("NFIC"), who provided a performance bond for James Construction. NFIC, however, has not moved for summary judgment.

2

III.

<u>Undisputed Facts</u>

The SRMP, which is approximately 3,150-feet long, provides storm-water drainage for large sections of the DFW International Airport. Some of James Construction's contractual responsibilities as to the SRMP included the excavation for the installation of the SRMP, the actual installation, the placement of embedment around the SRMP, and the placement of backfill above the SRMP. Among other things, the Contract provides that: "Unacceptable work, whether the result of poor workmanship, use of defective materials, damage through carelessness, or any other cause found to exist prior to the final acceptance of the work, shall be removed immediately and replaced in an acceptable manner in accordance with the provisions of the subsection titled CONTRACTOR'S RESPONSIBILITY FOR WORK of Section 70." <u>See</u> Def.'s App. in Support of Resp. to Mot. for Summ. J. ("Def.'s App.") at 8 (Contract at § 50-10.1).

After installation, the SRMP exhibited some deflection or bending. In March of 2001, James Construction removed and replaced various sections of the SRMP at its expense. In 2002, upon receipt of a letter concerning problems with the SRMP, James Construction, however, informed DFW that it would not repair or replace it at its expense. In 2003, in an effort to resolve the dispute, DFW requested that James Construction provide it with a 5-year extended warranty promising that James Construction would, at its expense, complete repair of any joint separation within

3

the SRMP and replace any pipe section equal to or exceeding a certain degree of deflection. See Def.'s App. at 55. James Construction refused. Deflections of the SRMP were measured through inspections performed from March 2001 through April 2005.

## IV.

### Applicable Summary Judgment Principles

A party is entitled to summary judgment on all or any part of a claim as to which there is no genuine issue of material fact and as to which the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986). The moving party has the initial burden of showing that there is no genuine issue of material fact. Anderson, 477 U.S. at 256. The movant may discharge this burden by pointing out the absence of evidence to support one or more essential elements of the non-moving party's claim "since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex Corp. v. Catrett, 477 U.S. 317, 323-25 (1986). Once the moving party has carried its burden under Rule 56(c), the non-moving party must do more than merely show that there is some metaphysical doubt as to the material facts. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). The party opposing the motion may not rest on mere allegations or denials of pleading, but must set forth specific facts showing a genuine issue for trial. Anderson, 477 U.S. at 248, 256. To meet this burden, the nonmovant must

4

"identify specific evidence in the record and articulate the 'precise manner' in which that evidence support[s] [its] claim[s]." Forsyth v. Barr, 19 F.3d 1527, 1537 (5th Cir. 1994). An issue is material only if its resolution could affect the outcome of the action. Anderson, 477 U.S. at 248. Unsupported allegations, conclusory in nature, are insufficient to defeat a proper motion for summary judgment. Simmons v. Lyons, 746 F.2d 265, 269 (5th Cir. 1984).

V.

Analysis

Below, the court examines each of the specific grounds[3] raised by James Construction in its motion for partial summary judgment.

A.   Deflection Criteria

James Construction frames DFW's counterclaim as urging breach of the Contract, because the deflection of the SRMP exceeds 5%. So framed, James Construction urges that summary judgment is proper, because deflection in excess of 5% being unacceptable was not an industry standard at the time of the

---

[3] James Construction also generally alleges without discussion that DFW cannot prove the elements of its breach-of-contract claim. The elements of breach of contract under applicable Texas law are: (1) the existence of a valid contract; (2) performance by the plaintiff (DFW); breach of contract by the defendant (James Construction); and (4) damages sustained by plaintiff (DFW) as a result of the breach. See Sport Supply Group, Inc. v. Columbia Cas. Co., 335 F.3d 453, 465 (5th Cir. 2003). The court is satisfied that DFW has come forward with sufficient facts to survive summary judgment on each element of its breach-of-contract claim. Further discussion is thus unwarranted.

5

Contract's inception and hence not part of the Contract.  See Pl.'s Br. at 8.

James Construction has erected a straw man only to knock him down.  DFW does not contend that excessive deflection of the SRMP is a project specification in the Contract.  See Def's Br. in Supp. of Resp. ("Def.'s Br.") at 11.  Rather, DFW -- which, by its counterclaim, asserts, inter alia, joint separation that has allowed dirt and other foreign material into and water out of the SRMP, improper placement of the trench in which the SRMP was installed, and improper placement of embedment material on top of the SRMP -- merely contends that the deflection is evidence of these defects that are, in turn, encompassed by the Contract.  And, frankly, common sense would seem to dictate that DFW is correct in this assertion.  Regardless, however, this issue is obviously a fact question not properly disposed of by summary judgment.

In its reply,[4] James Construction attempts, mostly in conclusory fashion, to suggest that DFW is just now alleging the problems with the SRMP noted above.  The summary-judgment record, however, indicates that this is not the case.  For example, DFW's expert report of June 30, 2006, notes the following defects:

- Excessive deflection due to inadequate compaction of

---

[4] Contemporaneously with its reply of October 23, 2006, James Construction filed objections and a motion to strike certain of DFW's summary-judgment evidence (collectively, "the Objections").  Putting aside any issue concerning the timeliness of the Objections, in ruling on the motion for partial summary judgment, the court has taken into account the contents of the Objections in evaluating what weight, if any, to afford the evidence in dispute.

6

bedding material.[5]

- Installed pipe that exhibits crimps through the ribs, gouges, and holes.

- Pipe joints have separated and settled.

- Significant rust is apparent on the observed inside of the pipe.

See, e.g., Pl.'s App. in Supp. of Partial Summ. J. ("Pl.'s App.") at 209 (emphasis added). In addition, in a December 5, 2003, letter wherein DFW requested the 5-year warranty from James Construction, DFW notes joint separation. See Def.'s App. at 55. Moreover, even had DFW not raised all of the specific defects now before the court, James Construction fails to articulate or cite to any legal authority whatsoever as to why DFW, in response to its motion for summary judgment, cannot come forward with such evidence at this time. Regardless, the court is satisfied that summary judgment on the deflection issue is inappropriate.

B.  No Material Breach

Because, according to James Construction, the SRMP currently continues to function for what it is designed to do, James Construction next argues that summary judgment should be granted, because any breach of the Contract is not material. See Pl.'s Br. at 8, ¶ 20. Putting aside that this argument is a non-sequitur, whether a breach of contract is material is a fact question. See, e.g., Hensley v. E.R. Carpenter Co., Inc., 633 F.2d 1106, 1110 (5th Cir. 1980). Hence, summary judgment is not

---

[5] The manner in which DFW's expert articulated this defect further demonstrates that DFW is merely alleging deflection to be a mere symptom of other problems with the SRMP.

7

proper on this ground either.

C.   No Damages

James Construction also urges that summary judgment is proper, because DFW cannot prove that it has suffered damages as a result of the deflection of or other problems with the SRMP. See Pl.'s Br. at 11, ¶ 26. James Construction is incorrect. DFW has submitted controverting evidence that the SRMP is defective, that, under the Contract, as discussed below, it is entitled to cost-of-replacement damages, and that those damages are approximately $2.4 million. See Def.'s App. at 14-22. This summary-judgment ground is thus without merit as well.

D.   Measure of Damages

If, however, DFW has suffered damages, James Construction contends that it is only entitled to the cost of repairing the SRMP and not to the cost of replacing it. In so urging, James Construction completely ignores that the Contract expressly provides for a cost-of-replacement measure of damages. See Def.'s App. at 8 (Contract at § 50-10.1).[6] As correctly pointed out by DFW, James Construction equally ignores that, under applicable law, parties to a contract may agree to the remedy to be applied in the event of breach, just as they have done here. See Sowell v. Natural Gas Pipeline Co. of America, 604 F. Supp. 371, 380 (N.D. Tex. 1985), aff'd, 789 F.2d 1151 (5th Cir. 1986).

---

[6]Because cost of replacement is the remedy set forth in the Contract for breach, James Construction also fails, by argument or citation to any applicable legal authority, to persuade the court that DFW was required to specially plead cost-of-replacement damages under Rule 9(g) of the Federal Rules of Civil Procedure. See Pl.'s Br. at 30, ¶ 30.

8

James Construction's reliance on the "landmark" New York, 1921, opinion of <u>Jacob & Youngs v. Kent</u>, 129 N.E. 889 (N.Y. 1921) and the Fifth Circuit opinion of <u>Ferrell v. Secretary of Defense</u>, 662 F.2d 1179, 1181 (5th Cir. 1981) is completely misplaced. <u>See</u> Pl.'s Br. at 9-10. Neither involves a situation where, as here, the parties contractually agreed to a certain remedy.

To the extent that James Construction in its reply now argues that DFW's interpretation of the Contract regarding the appropriate measure of damages is incorrect, this assertion at best renders the Contract ambiguous. Consequently, summary judgment on this issue remains improper. <u>See</u> <u>Geoscan, Inc. v. Geotrace Technologies, Inc.</u>, 226 F.3d 387, 390 (5th Cir. 2000) ("If a contract is ambiguous, 'summary judgment is inappropriate because the interpretation of a contract is a question of fact.'") (citation omitted).

E.   <u>DFW's Attorney's Fees</u>

Finally, the court concurs with DFW that it has properly presented its claim for attorney's fees under Section 38.002 of the Texas Civil Practice and Remedies Code. In order to recover attorney's fees under that section: "(1) the claimant must be represented by an attorney; (2) the claimant must present the claim to the opposing party or duly authorized agent of the opposing party; and (3) payment for the just amount owed must not have been tendered before the expiration of the 30th day after the claim is presented." <u>See</u> Tex. Prac. & Rem. Code § 38.002. DFW, the claimant, is represented by an attorney. James

9

Construction concedes that DFW, on June 30, 2006, presented a claim for $2.4 million in damages for the cost to replace the SRMP.  See Pl.'s Br. at 12, ¶ 31.  As evidenced by James Construction's September 28, 2006, motion for summary judgment on this very claim, James Construction did not pay the amount owed within 30 days of the claim's presentment.  Therefore, DFW did present its claim as required, and summary judgment is denied.

## VI.
## Order

For the reasons discussed above, the court concludes that James Construction's motion for partial summary judgment be, and is hereby, denied.

SIGNED October 25, 2006.

      /s/ John McBryde
JOHN McBRYDE
United States District Judge